**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| THE CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>                     Plaintiff,<br><br>v.<br><br>HP INC.,<br><br>                     Defendant. | Civil Action No. 6:20-cv-01041-ADA |

**HP INC.'S 12(B)(6) MOTION TO DISMISS**

### <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................2

      A.      Background ...............................................................................................2

      B.      Caltech's Failure To Allege Infringement ..............................................3

      C.      Caltech's Failure To Allege Compliance With 35 U.S.C. § 287(a) ........4

      D.      Caltech's Failure To Allege Exceptionality Under 35 U.S.C. § 285 .......5

III.    LEGAL STANDARD.............................................................................................5

IV.     ARGUMENT .........................................................................................................6

      A.      Caltech's Complaint Fails To Sufficiently Plead How HP's Products
            Allegedly Infringe..................................................................................6

      B.      Caltech's Claims for Past Damages Should Be Dismissed For Failing To
            Plead Compliance With 35 U.S.C. § 287(a). .......................................10

      C.      Caltech's Claims for Attorney's Fees and Costs Should Be Dismissed For
            Failing To Plead Exceptionality Under 35 U.S.C. § 285....................12

V.      CONCLUSION....................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ...............................................................6

*Anderson v. Wells Fargo Bank, N.A.*,
    953 F.3d 311 (Fed. Cir. 2020)...................................................................................3

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017).................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................5, 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................5

*Castlemorton Wireless, LLC v. Bose Corp.*,
    No. 6:20-cv-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)................5

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009).................................................................................11

*De La Vega v. Microsoft Corp.*,
    2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)..........................................6, 8, 9, 10

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of North*
    *America, Inc.*,
    No. 6:11-cv-00034-LED, 2011 WL 13223466 (E.D. Tex. Sept. 29, 2011) .............8

*Express Mobile, Inc. v. Liquid Web, LLC*,
    Nos. 18-cv-01177-RGA, 18-cv-01181-RGA, 2019 WL 1596999 (D. Del. Apr.
    15, 2019) ..................................................................................................................11

*Intellectual Ventures I LLC v. Trend Micro Inc.*,
    944 F.3d 1380 (Fed. Cir. 2019).................................................................................12

*Kazenercom Too v. World Trade Financial Corp.*,
    No. 11-cv-00831-AWA, 2012 WL 13029410 (W.D. Tex. Mar. 12, 2012)................3

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
    No. 17-cv-00506-LPS, 2017 WL 5501489 (D. Del. Nov. 16, 2017)........................10

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020).................................................................................11

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
    No. 6:11-cv-00229-JDL, 2012 WL 9864381 (E.D. Tex. July 27, 2012)................................8

*Peralta v. Cal. Franchise Tax Bd.*,
    673 F. App'x. 975 (Fed. Cir. 2016) ........................................................................7

*Stragent LLC v. BMW of North American, LLC*,
    No. 6:16-cv-00335-RWS, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ............................7, 8

*Uniloc USA v. Avaya, Inc.*,
    No. 6:15-cv-01168-JRG, Dkt. No. 48 (E.D. Tex. May 13, 2016) ............................................8

## Statutes

35 U.S.C. § 271(a) ......................................................................................................................6

35 U.S.C. § 285 .............................................................................................................1, 2, 5, 12

35 U.S.C. § 287(a) .......................................................................................................1, 4, 10, 11

## Other Authorities

Fed. R. Civ. P. 8(a)(2).........................................................................................................1, 5, 7, 9

Fed. R. Civ. P. 12(b)(6).....................................................................................................................5, 12

## I.      INTRODUCTION

The California Institute of Technology's ("Caltech") Complaint against HP Inc. ("HP") falls far short of satisfying the Rule 8 pleading standard in multiple respects.

*First*, Caltech does not plead any facts showing how any HP products allegedly infringe any asserted claim.  Instead, the Complaint merely provides a high-level description of the claimed invention and asserts that HP "Wi-Fi products that incorporate IRA/LDPC encoders and/or decoders" are "Accused Products."  It then states that the Accused Products comply with the IEEE 802.11n/ac/ax Wi-Fi standards, and that on "information and belief" the accused products meet the limitations of exemplary claims.  These barebones allegations fail to plead a viable claim for patent infringement because Caltech does not assert that compliance with those Wi-Fi standards necessarily infringes, or even that all HP products that comply with those Wi-Fi standards are accused.  To the contrary, in the Complaint and in the *Caltech v. Broadcom* litigation referenced in the Complaint, Caltech represented that "compliance" with those standards is ***insufficient*** to prove infringement.  As a result, and because the Complaint does not explain what distinguishes an accused "IRA/LDPC encoder and/or decoder" from a non-infringing 802.11n/ac/ax implementation, the Complaint fails to plausibly plead that *any* HP products infringe.

*Second*, Caltech seeks an award of only past damages because the patents-in-suit expired before the Complaint's filing date.  But to state a claim for past damages, a patentee must allege compliance with the marking obligations of 35 U.S.C. § 287(a).  Caltech's Complaint fails to make any such allegation, which is problematic given Caltech's public admission that it has licensed the patents-in-suit to Hughes Communications Inc. ("Hughes").

*Third*, Caltech does not plausibly plead that this case is exceptional under 35 U.S.C. § 285. The Complaint merely concludes that Caltech is entitled to attorney's fees and costs without alleging that HP had pre-suit awareness of the patents or otherwise engaged in conduct that would

create liability under § 285.

Accordingly, because Caltech has failed to plead facts sufficient to establish a viable claim for either infringement, past damages, or attorney's fees and costs, the Complaint should be dismissed.

## II.     STATEMENT OF FACTS

### A.     Background

Caltech's Complaint alleges that HP infringed three patents before their expiration:  U.S. Patent Nos. 7,116,710 ("'710 patent"), 7,421,032 ("'032 patent"), and 7,916,781 ("'781 patent"). All three patents expired on August 18, 2020.  Compl. ¶ 15.

The patents-in-suit recite a total of 77 claims, including both apparatus and method claims. According to the Complaint, these claims relate to a "type of error correction codes, called 'irregular repeat and accumulate codes' (or 'IRA codes')," capable of correcting errors that arise during data transmission.  Compl. ¶ 17.  Caltech alleges that the 802.11n, 802.11ac, and 802.11ax IEEE Wi-Fi standards "***may*** be implemented using Caltech's patented IRA/LDPC encoder and decoder technology."  *Id.* ¶ 23 (emphasis added).  Critically, however, Caltech does ***not*** allege that the standards ***require*** the use of Caltech's codes.  *Id.*

Confirming this point, Caltech stated in a motion filed in the *Caltech v. Broadcom* litigation that "Caltech's patents are not standard essential patents[.]"  Ex. 1 (Caltech Mot.) at 1.  Further, Caltech's expert witness Dr. Matthew Shoemake testified at trial about implementations that "perform . . . according to the Wi-Fi standard," but "do not use Caltech's patents."  *E.g.*, Ex. 3

(*Caltech v. Broadcom* Jan. 17, 2020, PM Trial Tr.) at 76:10–12, 79:17–18.[1]  In other words, Caltech and its expert have previously represented that the Wi-Fi standards at issue here can be implemented without practicing the asserted patents.

### B.      Caltech's Failure To Allege Infringement

The Complaint alleges that HP's products include features that operate consistent with certain sections of the IEEE Wi-Fi standards.  *See*, *e.g.*, Compl. ¶¶ 30–34.  But the Complaint never alleges facts showing ***how*** any HP product allegedly meets any claim limitation, much less facts showing ***why*** HP's specific implementation of the Wi-Fi standards is not among those Caltech and its expert concede "do not meet the limitations of Caltech's claims[.]"  *E.g.*, Ex. 3 [Shoemake] at 76:11–24.

Instead, Caltech vaguely identifies the accused products as "Wi-Fi products that incorporate IRA/LDPC encoders and/or decoders" and broadly accuses HP laptops, desktops, tablets, workstations, and thin clients "that incorporate IRA/LDPC" codes.  Compl. ¶ 27.  Caltech then alleges in conclusory fashion that "the Accused Products are implemented in a manner that not only complies with the 802.11n, 802.11ac, and/or 802.11ax standards, but also infringes the Asserted Patents."  *Id*. ¶¶ 30, 43, 56.  Caltech does not define "IRA/LDPC encoder" or explain what differentiates allegedly infringing implementations of such encoders from non-infringing implementations.  This leaves HP unable to discern from the Complaint whether its 802.11-compliant products contain the type of encoder Caltech concedes is non-infringing, or even what it takes for an 802.11-compliant encoder to allegedly infringe.

---

[1] The Court can take judicial notice of the *Caltech v. Broadcom* trial transcript because it is a prior public judicial proceeding that addresses material pertinent to this litigation.  *See Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (Fed. Cir. 2020) (holding that courts may take judicial notice of public records in prior judicial proceedings); *Kazenercom Too v. World Trade Financial Corp.*, No. 11-cv-00831-AWA, 2012 WL 13029410, at *7 n.5 (W.D. Tex. Mar. 12, 2012) (same).

Caltech makes these same conclusory allegations for each of the asserted patents-in-suit. For each patent, Caltech first identifies a representative claim and alleges the conclusion that the accused products practice "each and every limitation of at least [the representative claim]." *Id*. ¶¶ 29, 42, 55. Caltech then alleges that the accused products "comply with the IEEE 802.11n, 802.11ac, and/or 802.11ax standards and the 12 LDPC error correction codes defined in those standards," and spends paragraphs discussing HP's purported compliance with those Wi-Fi standards—even though Caltech has repeatedly represented that proving compliance with those same standards would ***not*** be enough to show infringement. *Id*. ¶¶ 30–34, 43–47, 56–60.

Caltech also includes a conclusory paragraph or two at the end of each patent section (1) parroting the claim language, such as "[t]he first encoders repeat the stream of bits irregularly and scramble the repeated bits," "[t]he LDPC encoders in the Accused Products encode the collection of message bits in accordance with the Tanner graph depicted in claim 11," and "[t]he encoding operation includes an accumulation of mod-2 or exclusive-OR sums of bits in subsets of the information bits," and (2) asserting that HP's accused products meet these limitations. *Id*. ¶¶ 35, 36, 49, 61. Once again, however, Caltech provides ***no factual*** basis apart from mere compliance with the IEEE 802.11n/ac/ax standards in support of those bare legal ***conclusions*** that the accused products allegedly infringe.

### C.    Caltech's Failure To Allege Compliance With 35 U.S.C. § 287(a)

Caltech's infringement claims seek only past damages because the patents-in-suit expired before the filing date of the Complaint. *Id*. ¶ 15. The Complaint fails to assert any facts showing actual notice of alleged infringement to HP before the patents expired or constructive notice in compliance with the patent marking requirements under 35 U.S.C. § 287(a). Moreover, although Caltech admits that it has licensed these patents to at least Hughes (Ex. 2 (*Caltech v. Broadcom*

4

Jan. 16, 2020, PM Trial Tr.) at 52:15–53:8),[2] the Complaint also fails to allege any facts showing that Caltech took any efforts (much less reasonable ones) to ensure that Hughes continuously marked all products covered by the license. In fact, the Complaint has no allegations relating to the patent marking statute at all.

### D.      Caltech's Failure To Allege Exceptionality Under 35 U.S.C. § 285

The Complaint states that HP's alleged infringement "is exceptional and entitles Caltech to attorney's fees and costs" without pleading any facts in support for that conclusion. Compl. ¶¶ 40, 53, 65 (grammatical alteration added). Caltech does not allege that HP had pre-suit awareness of the patents-in-suit or that HP has engaged in any objectively unreasonable conduct that would warrant an award of attorney's fees.

## III.   LEGAL STANDARD

A complaint is subject to dismissal when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A well-pleaded complaint must therefore provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands enough facts "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 547); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-cv-00029-ADA, 2020 WL 6578418, at *4–5 (W.D. Tex. July 22, 2020) (applying *Twombly* and *Iqbal* in the context of a complaint alleging patent infringement).

Courts apply a two-step approach when considering Rule 12(b)(6) motions. First, a court must accept as true all well-pleaded factual allegations; however, the court must not "accept as

---

[2] Caltech witness Hui Jin testified in the *Caltech v. Broadcom* trial that Hughes sold over a million products that practiced at least one claim from the patents-in-suit. Ex. 2 [Jin] at 75:13–76:3.

true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 677–79 (quoting *Twombly*, 550 U.S. at 555).  Second, the court must determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief."  *Id*. at 664.  A claim is implausible when it does not allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id*. at 678.

For a patent infringement claim, the alleged infringer can be liable only if it "makes, uses, offers to sell, or sells" the allegedly infringing product.  *See* 35 U.S.C. § 271(a).  This requires that the plaintiff plead facts that identify an allegedly infringing product and describe how that product allegedly infringes.  *See De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020).

## IV.   ARGUMENT

HP's motion to dismiss is based on three grounds: (1) the Complaint fails to plead sufficient factual allegations to establish a viable claim for infringement, (2) the Complaint fails to plead compliance with the patent marking statute, and (3) the Complaint fails to plead sufficient factual allegations to support an award of attorney's fees and costs.

### A.   Caltech's Complaint Fails To Sufficiently Plead How HP's Products Allegedly Infringe.

Caltech's infringement allegations against HP fail to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Direct patent infringement requires that the accused product practice every limitation recited in at least one of the patent's claims.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).[3]  Thus, to give "fair notice" of a claim for patent infringement under Rule 8 and *Iqbal*, a complaint must plead (1) the specific patent claims at issue

---

[3] The Complaint does not allege indirect infringement.

6

and (2) how the accused products allegedly practice those claims.  *See Peralta v. Cal. Franchise Tax Bd.*, 673 F. App'x. 975, 980 (Fed. Cir. 2016) (upholding dismissal of complaint that contained only "boilerplate allegations that defendants infringe").

Caltech's Complaint focuses on the IEEE Wi-Fi standards despite having repeatedly represented that proving compliance with those standards is insufficient to show infringement of the patents-in-suit.  As a result, Caltech cannot plausibly plead infringement by alleging mere standards compliance.  *See Stragent LLC v. BMW of North American, LLC*, No. 6:16-cv-00335-RWS, 2017 WL 2821697, at *5 (E.D. Tex. Mar. 3, 2017) (pleading compliance with a standard is insufficient to allege infringement when the plaintiff "adduced no facts suggesting that the asserted claims 'cover every implementation of [the standard]'") (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010)).   Indeed, the Complaint itself contends that the 802.11n, 802.11ac, and 802.11ax standards "***may*** be implemented using Caltech's patented IRA" codes, but never once alleges that "any device" implementing those standards ***necessarily*** infringes Caltech's patents.  Compl. ¶ 23.  Nor could Caltech do so.  As referenced above, Caltech and its expert confirmed the existence of devices that "perform . . . according to the Wi-Fi standard" but "do not use Caltech's patents."  Ex. 3 [Shoemake] at 76:11–24, 79:16–21.

Aside from references to the IEEE standards, Caltech's Complaint alleges no facts directed to HP's specific implementations of the IEEE standards.  Specifically, Caltech does not allege facts showing that HP's implementations are not among the standards-compliant devices that do not infringe the patents-in-suit.  This alone requires dismissal.

Moreover, as courts routinely recognize, the minimum threshold for plausible allegations of infringement varies depending on the complexity of the technology at issue.  "[C]ases involving more nebulous, less tangible inventions such as computer software methods may require a higher

degree of specificity to provide proper notice to the defendant." *Stragent LLC*, 2017 WL 2821697, at *2 (citing *Uniloc USA v. Avaya, Inc.*, No. 6:15-cv-01168-JRG, Dkt. No. 48 at 7 (E.D. Tex. May 13, 2016)); *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-00229-JDL, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012) (holding same); *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of North America, Inc.*, No. 6:11-cv-00034-LED, 2011 WL 13223466, at *3 (E.D. Tex. Sept. 29, 2011) (holding same).

Here, the patents-in-suit are directed to more nebulous, less tangible features that require Caltech to plead infringement with specificity. The patents' claims recite a type of error correction codes called an "irregular repeat and accumulate code," which purportedly employs mathematical operations like "modulo-2" summing to correct errors that may appear during data transmission. Compl. ¶ 17. The asserted claims further confirm the abstract, intangible nature of the claimed invention by reciting coding systems that repeat bits (i.e., binary digits) irregularly and output bits at a rate within 10% of one ('710 patent at 8:33–41), encoders that generate parity bits in accordance with Tanner graphs ('032 patent at 8:63–9:34), and encoders that encode signals using linear transform and accumulation operations ('781 patent at 7:25–38). The abstract nature of these claims requires Caltech to allege infringement with specificity. *See Uniloc USA*, 2016 WL 7042236, at *2–4 (requiring infringement of claims relating to communications hardware and software to be pleaded with specificity); *see also De La Vega*, 2020 WL 3528411, at *6–7.

When dealing with comparably intangible patent claims, courts routinely strike causes of action that fail to plead facts relating to a defendant's supposedly infringing implementation—as Caltech has done here. In *Chapterhouse, LLC v. Shopify, Inc.*, for example, the patents were directed to a digital system for automating secondary purchase opportunities. *See* No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *3 (E.D. Tex. Dec. 11, 2018). The complaint split an exemplary

claim into individual elements, read those elements onto the accused product, and provided "screenshots" purportedly showing how the accused product embodies each claim element.  *Id.* at *2.  The *Chapterhouse* court dismissed the complaint, holding that parroting a representative claim's elements onto an accused product and providing supporting screenshots does not satisfy the pleading standard under Rule 8.  *Id*.

Likewise, in *Lexington Luminance LLC v. Service Lighting & Elec. Supplies, Inc.*, the patents disclosed "a semiconductor light-emitting device having a particular structure and chemical composition."  *See* No. 3:18-cv-01074-RBK, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018).  The complaint generically alleged that the accused devices practiced the limitations of the asserted patent claim.  *Id*. at *1–2.  The court held that, particularly in light of the complexity of the technology, the plaintiff must plead "[a]dditional factual information" to plausibly allege infringement.  *Id*. at *2.  Notably for Caltech's allegations here, the court also held that accusing "other similar products" to the device identified in the complaint failed to reasonably inform the defendant of the accused products.  *Id*.

Similar to *Chapterhouse* and *Lexington*, Caltech has failed to plead sufficient facts to plausibly allege patent infringement.  The three patents-in-suit recite multiple apparatus and method claims.  Yet the Complaint does not identify (1) which products and features allegedly practice any asserted claims other than those that comply with IEEE Wi-Fi standards, (2) how those features allegedly infringe, or (3) how HP allegedly performs the claimed methods.  *See, e.g.*, Compl. ¶¶ 27, 29, 30, 35, 36, 42, 43, 49, 55, 56, 61.  Rather, Caltech vaguely identifies the accused products as "Wi-Fi products that incorporate IRA/LDPC encoders and/or decoders" without explaining how allegedly infringing implementations of such encoders differ from non-infringing implementations or why any HP products supposedly fall in the former group and not

the latter.  Compl. ¶ 27.  The Complaint then focuses *solely* on the 802.11 standards—which Caltech admits are insufficient to show infringement (Ex. 3 [Shoemake] at 76:11–24, 79:16–21)—and does not allege any facts regarding HP's particular implementation of those standards (or even a specific accused encoder).

Also like in *Chapterhouse*, Caltech merely identifies an exemplary claim for each patent and parrots the limitations of those claims onto unspecified accused products.  Compl. ¶¶ 35, 36, 49, 61.  This Court has held that such a bare-bones pleading is insufficient to state a claim for infringement because it "does not provide any written description of how the Accused Instrumentalities perform the [claim limitation]."  *De La Vega v. Microsoft Corp.*, No. 19-cv-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020) (dismissing infringement claims because the complaint "merely repeats the claim language" with supporting screenshots); *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-cv-00506-LPS, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) ("[A] patentee cannot meet its obligation to assert a plausible claim of infringement . . . by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element.").

In sum, Caltech's Complaint should be dismissed as a matter of law because the bare-bones conclusory statements in the Complaint are insufficient to state a plausible claim for patent infringement.

**B.   Caltech's Claims for Past Damages Should Be Dismissed For Failing To Plead Compliance With 35 U.S.C. § 287(a).**

Caltech's Complaint seeks only past damages because the patents-in-suit expired before Caltech initiated this litigation.  Compl. ¶ 15.  To recover past damages for the '710 and '032

patents,[4] Caltech must allege compliance with 35 U.S.C. § 287(a), which requires (1) providing actual or constructive notice to HP of its infringement allegations or (2) compliance with marking requirements under the statute. *See* 35 U.S.C. § 287(a); *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."). This pleading requirement applies even when there is no product to mark. *Express Mobile, Inc. v. Liquid Web, LLC*, Nos. 18-cv-01177-RGA, 18-cv-01181-RGA, 2019 WL 1596999, at *2 (D. Del. Apr. 15, 2019) ("A claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all.").

Despite these requirements, Caltech's Complaint does not have a single allegation relating to its obligations under the patent marking statute. Thus, Caltech's claims for past damages should be dismissed for failing to plead compliance with section 287(a). *See Express Mobile Inc.*, 2019 WL 1596999, at *2 (dismissing claims for past damages for failure to plead compliance with 35 U.S.C. § 287(a)).

The Complaint's omission with respect to marking obligations is particularly deficient given that (1) Caltech confirmed during the *Caltech v. Broadcom* trial that it licensed the patents-in-suit to Hughes and (2) Caltech represented at the same trial that Hughes sold millions of products practicing the asserted claims. Ex. 2 [Jin] at 52:15–53:8, 75:13–76:3. Caltech cannot recover past damages unless it made "reasonable efforts" to ensure that its licensee Hughes marked products covered by the license. *See Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d

---

[4] Marking requirements do not apply to patents that claim only methods, such as the '781 patent, because "where the patent claims are directed to only a method or process there is nothing to mark." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316–17 (Fed. Cir. 2009) (quoting *American Med. Sys., Inc. v. Med. Eng'g Corp.*, 6. F.3d 1523, 1538–39 (Fed. Cir. 1993)).

1299, 1312 (Fed. Cir. 2020) ("[Patentee] must show that it made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '789 patent marked the products."). Caltech made no such allegation in the Complaint.

**C.    Caltech's Claims for Attorney's Fees and Costs Should Be Dismissed For Failing To Plead Exceptionality Under 35 U.S.C. § 285.**

Caltech's Complaint seeks attorney's fees and costs on the basis that HP engaged in exceptional acts of infringement. Compl. ¶¶ 40, 53, 65. However, the Complaint does not allege any facts that allow a reasonable inference of exceptional conduct. The patents-in-suit expired before the filing date of the Complaint (Compl. ¶ 15), and Caltech does not allege pre-suit notice— much less pre-suit knowledge of the patents. It is implausible that HP could have engaged in exceptional acts of infringement when there is not even an allegation that HP had notice of alleged infringement prior to the expiration of the patents. *See Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) (holding that district courts must determine whether a case is exceptional by considering the "totality of circumstances").

**V.    CONCLUSION**

For the reasons stated above, HP respectfully requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  February 26, 2021

/s/ *Barry K. Shelton*
Barry K. Shelton (TX Bar No. 24055029)
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620 S, Suite 205
Austin, TX  78734-4775
Telephone: (512) 263-2165
Fax: (512) 263-2166

Garland T. Stephens (TX Bar No. 24053910)
garland.stephens@weil.com
**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana, Suite 1700
Houston, TX  77002-2784
Telephone: (713) 546-5000

Anne M. Cappella
anne.cappella@weil.com
Edward R. Reines
edward.reines@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1175
Telephone: (650) 802-3000

Sarah R. Frazier (*pro hac vice*)
sarah.frazier@wilmerhale.com
Richard Goldenberg (*pro hac vice*)
richard.goldenberg@wilmerhale.com
Joseph J. Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Richard W. O'Neill (*pro hac vice*)
richard.o'neill@wilmerhale.com
Cynthia D. Vreeland (TX Bar #
20625150)
cynthia.vreeland@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000

James M. Dowd (*pro hac vice*)
james.dowd@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone:  (213) 443-5300

Joseph F. Haag (*pro hac vice*)
joseph.haag@wilmerhale.com
Sonal N. Mehta (*pro hac vice*)
sonal.mehta@wilmerhale.com
Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone:  (650) 858-6000

*Attorneys for Defendant HP Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(a)(3) on February 26, 2021.

*/s/ Barry K. Shelton*
Barry K. Shelton

14